**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **CV 17-552-JFW**                                              Date:  May 23, 2017

Title:     In re: Harry Roussos
           Theodosios T. Roussos -v- Howard M. Ehrenberg

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**        **ATTORNEYS PRESENT FOR DEFENDANTS:**
               None                                                   None

**PROCEEDINGS (IN CHAMBERS):**        **ORDER AFFIRMING BANKRUPTCY COURT'S JANUARY 12, 2017 ORDER**

On January 23, 2017, Appellants Theodosios T. Roussos, Dr. George Singer, MD, Thalia Singer, Harris Roussos, and Theodosia Roussos (collectively, "Appellants") filed an Appeal from the United States Bankruptcy Court's January 12, 2017 Order, After Hearing, Granting Chapter 7 Trustee's Motion for Order (1) Compelling Theodosios Roussos, Paula Roussos, and S.M.B. Management, Inc., a California Corporation, to Turnover Property of the Estate and (2) Authorizing Trustee to Utilize Services of the United States Marshals to Enforce Court Order ("January 12, 2017 Order").  On March 27, 2017, Appellants filed their Opening Brief.  On May 1, 2017, Appellee Howard M. Ehrenberg, Chapter 7 Trustee for the Estate of Appellant Theodosios Roussos (the "Trustee"), filed his Opposition Brief.  On May 8, 2017, Appellants filed a Reply Brief.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's May 15, 2017 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

      **A.      Background Facts**

On June 14, 1993, two brothers, Theodosios Roussos and Harry Roussos (collectively, the "Roussos Brothers") filed separate Chapter 11 petitions commencing their respective bankruptcy cases, specifically Case No. 2:15-bk-21624-ER, *In re Harry Roussos*, and Case No. 2:15-bk-21626-ER, *In re Theodosios Roussos.*  On May 9, 1994, in their Chapter 11 bankruptcy cases, the Roussos Brothers filed a Motion By Debtor-In-Possession for Order Authorizing Sale of Real

Property Free and Clear of Co-Owner Interests and Liens, and Authorizing Disbursement of Sales Proceeds (the "Sale Motion"). In the Sale Motion, the Roussos Brothers sought approval of the sale of the apartment building located at 2727-2741 Abbot Kinney Boulevard, Venice, California (the "Abbot Kinney Property") to OF Enterprises, LP ("OF") and the apartment building located at 153 San Vicente Boulevard, Santa Monica, California (the "San Vicente Property") (collectively, the "Properties") to SMB Investors Associates, LP ("SMB").[1] On October 19, 1994, pursuant to the Sale Order, the Roussos Brothers executed a grant deed conveying title to the "Abbot Kinney Property to O.F., which was recorded on October 24, 1994. On November 29, 1994, pursuant to the Sale Order, the Roussos Brothers executed a grant deed conveying title to the San Vicente Property to S.M.B., which was recorded on December 5, 1994.

In July 2015, the bankruptcy cases of the Roussos Brothers were reopened when a creditor, Lula Michaelides, discovered that the Roussos Brothers had committed a fraud on the Bankruptcy Court in 1994.[2] Howard M. Ehrenberg was appointed as the Chapter 7 Trustee. After the Trustee concluded that the Roussos Brothers had orchestrated a fraud on the Bankruptcy Court in 1994, the Trustee filed adversary proceedings against the Roussos Brothers and others who were involved with the purportedly fraudulent sale of the Properties. These actions were entitled: (1) *Howard M. Ehrenberg v. Theodosios Roussos, Harry Roussos, Christine Roussos, Paula Roussos, OF, Liro, SMB, SMB Management, Chase Bank, N.A., OneWest Bank, N.A., and CIT Bank, N.A.*, Case No. 2:15-ap–1404-ER; and (2) *Howard M. Ehrenberg v. Theodosios Roussos, Harry Roussos, Christine Roussos, Paula Roussos, OF, Liro, SMB, SMB Management, Chase Bank, N.A., OneWest Bank, N.A., and CIT Bank, N.A.*, Case No. 2:15-ap–1406-ER. In order to prevent any transfer of the properties subject to the adversary proceedings, the Trustee filed a Motion for Order Imposing Stay Pursuant to 11 U.S.C. § 105(a) (the "Initial Stay Motion") on August 25, 2015, seeking to enjoin the arbitration to avoid further harm to the creditors.

On September 30, 2015, the Bankruptcy Court granted the Initial Stay Motion, and enjoined the arbitration through December 23, 2015, without prejudice to the Trustee filing a renewed

---

[1] The Roussos Brothers are co-trustees of both the S.M.B. Investors Associates Irrevocable Trust (the "SMB Trust") and the O.F. Management Irrevocable Trust (the "OF Trust"). OF is a California limited partnership and holds record title to the Abbot Kinney Property. The OF Trust owns a 99% interest in OF. Liro, Inc. ("Liro") is a California corporation and is the general partner of OF. Liro owns a 1% interest in OF as its sole general partner. SMB is a California limited partnership and holds record title to the San Vicente Property. SMB Trust owns a 99% interest in SMB. SMB Management, Inc. ("SMB Management") is a California corporation and is the general partner of SMB. SMB Management owns a 1% interest in SMB as its sole general partner. None of these relationships were known or disclosed to the Bankruptcy Court in connection with the Sale Motion in 1994.

[2] The Roussos Brothers' fraud was discovered by Michaelides as a result of evidence produced in an arbitration proceeding between the Roussos Brothers to resolve their disputes regarding the ownership and management of various properties and entities. The arbitration was commenced on June 19, 2012, when Harry Roussos and his wife, Christine, filed a petition to compel arbitration against Theodosios Roussos and his wife, Paula, in Los Angeles Superior Court, which was assigned Case No. BS138099.

motion for injunctive relief in the adversary proceedings.  On November 25, 2015, the Trustee filed a Motion for Preliminary Injunction Re Verified Complaint (1) for Declaratory Relief; (2) To Vacate Sale for Fraud on the Court; (3) To Quiet Title; (4) for Turnover of Property; (5) for Fraud; (6) for Breach of Fiduciary Duty; and (7) for Aiding and Abetting Breach of Fiduciary Duty in each of the adversary proceedings (the "Second Stay Motions") in order to maintain the status quo pending a final judgment or settlement in the adversary proceedings.  The Bankruptcy Court granted the Trustee's Second Stay Motions, and a preliminary injunction was issued in both adversary proceedings on December 21, 2015.  On January 27, 2016, Theodosios Roussos and his wife, Paula, filed notices of appeal of the December 21, 2015 Orders, and elected to have them heard in the District Court, where they were assigned the following case numbers: Case No. 2:16-cv-00601-JFW and Case No. 2:16-cv-00607-JFW.

On June 27, 2016, after briefing by the parties, this Court affirmed the Bankruptcy Court's December 21, 2015 Order in each of the cases.  Theodosios Roussos and his wife, Paula, separately appealed the District Court's June 27, 2016 Orders to the Ninth Circuit, where they were assigned the following case numbers: Case No. 16-56065 and Case No. 16-56066.  The Ninth Circuit consolidated the two appeals, the parties filed their respective briefs, and oral argument was scheduled for January 10, 2017.  On November 14, 2016, the Trustee filed a Motion for Order (1) Dismissing Consolidated Appeals as Moot and (2) Continuing Oral Argument Pending Ruling on Motion to Dismiss.  In his motion, the Trustee sought dismissal of the consolidated appeals as moot because the Trustee had entered into a settlement agreement with the majority of the defendants in the underlying adversary proceedings, including Harry Roussos and his wife, Christine.[3]  The settlement agreement provided that the two fraudulently sold apartment buildings would be returned to the Roussos Brothers' bankruptcy estates.  Section 6 of the settlement agreement, as amended, provided:

> Harry and Christine currently occupy rent free Units 4D and 4E in the San Vicente Property (the "Units").  From the Effective Date of this Agreement until such time as the escrow for the sale of the San Vicente Property has closed (the "COE"), the Trustee will allow Harry and Christine to continue to occupy the Units rent free.  The Trustee may evict Harry and Christine if they attempt to hinder, delay, interfere or thwart the Trustee's efforts to market and/or sell the San Vicente Property or for any other reason provided under applicable law except for the non-payment of rent prior to COE.[4]

The settlement agreement was approved by the Bankruptcy Court on October 6, 2016 (the "Settlement Approval Order"), and implemented, in part, by judgments entered on October 7, 2016

---

[3] Theodosios Roussos and his wife, Paula, were not parties to the settlement agreement. Paula Theodosios is now deceased.

[4] The Trustee advised the Bankruptcy Court that if Theodosios and/or Paula Roussos executed an amendment agreeing to be bound by the terms of the settlement agreement prior to the hearing on the motion to approve the settlement agreement, then Section 6 would be further amended to add identical language with respect to Theodosios and Paula Roussos and the units that they occupied in the San Vicente Property.  However, neither Theodosios or Paula Roussos agreed to be bound by the terms of the settlement agreement.

(collectively, the "Property Judgments"), which (1) voided the original sale order; (2) cancelled the grant deeds originally conveying title to the properties to OF and SMB; and (3) vacated the December 21, 2015 preliminary injunction. On January 4, 2017, the Ninth Circuit granted the Trustee's motion and dismissed the consolidated appeals as moot.

On October 20, 2016, Theodosios Roussos appealed the Settlement Approval Order and the Property Judgments to the United States Bankruptcy Appellate Panel for the Ninth Circuit. On November 17, 2016, the Trustee elected to have the appeals of the Settlement Approval Order and the Property Judgments transferred to the District Court. As a result, the five appeals were transferred and assigned the following case numbers: Case No. 2:16-cv-08612-JFW (Settlement Approval Order in Case No. 2:15-bk-21624-ER (jointly administered with Case No. 2:15-bk-21626-ER)); Case No. 2:16-cv-08613-JFW (Settlement Approval Order); Case No. 2:16-cv-08642-JFW (Property Judgment in Case No. 2:15-ap-01404-ER); Case No. 2:16-cv-08643-JFW (Property Judgment in Case No. 2:15-ap-01406-ER); and Case No. 2:16-cv-09115-JFW (Settlement Approval Order).[5] On April 19, 2017, after briefing by the parties, this Court affirmed the Bankruptcy Court's October 6, 2016 Settlement Approval Order and its October 7, 2016 Property Judgments in the three remaining cases.

### B.     Facts Related to This Appeal

After the Bankruptcy Court entered the Settlement Approval Order and the Property Judgments, the Trustee immediately assumed control over the Properties, and began to take the necessary steps to market and sell the San Vicente Property pursuant to the terms of the settlement agreement.[6] On October 31, 2016, the Trustee emailed Theodosios Roussos to inform him that as a result of a court-approved settlement and the absence of any leases or stay pending appeal of the Settlement Approval Order or the Property Judgments, he was required to surrender and deliver possession of the three units, Units 3B, 4A, and 4B (collectively, the "Units"), he was illegally occupying in the San Vicente Property. Theodosios Roussos refused to surrender and deliver possession of the Units to the Trustee. Because Theodosios Roussos's illegal occupancy of the units would complicate and potentially hinder the sale process, and in order to facilitate the Trustee's marketing and sale of the San Vicente Property in accordance with the settlement agreement, on November 29, 2016, the Trustee filed a Motion for Order (1) Compelling Theodosios Roussos, Paula Roussos, and S.M.B. Management, Inc., a California Corporation, to Turnover Property of the Estate and (2) Authorizing Trustee to Utilize Services of the United States Marshals to Enforce Court Order (the "Turnover Motion"). The Appellants filed a written opposition to the Turnover Motion on December 21, 2016. After oral argument on January 4, 2017, the

---

[5] On January 23, 2017, Case No. 2:16-cv-08613-JFW (Settlement Approval Order) and Case No. 2:16-cv-09115-JFW (Settlement Approval Order) were dismissed as duplicative of Case No. 2:16-cv-08612-JFW (Settlement Approval Order) with the consent of Appellant Theodosios Roussos.

[6] Although Theodosios Roussos appealed the Settlement Approval Order and the Property Judgments, no stay was granted.

Bankruptcy Court entered its Order granting the Trustee's Turnover Motion on January 12, 2017.[7] Appellants now appeal the Bankruptcy Court's January 12, 2017 Order.

## II. Issues of Appeal

Appellants present the following issues on appeal:

1. "Whether the Bankruptcy Court erred in its decision."[8]  Appellants' Opening Brief, p. 3.

2. "Whether the Bankruptcy Court erred in finding Roussos did not have a tenancy." *Id.*

3. "Whether the Bankruptcy Court erred in finding Roussos' tenancy had been extinguished by virtue of being merged into an involuntary conveyance (on which he objected and appealed)." *Id.*

4. "Whether the Bankruptcy Court erred in applying the doctrine of collateral estoppel." *Id.*

5. "Whether the Bankruptcy Court erred as a matter of law and fact, in finding the Third Party Tenants did not have tenancy's based on Roussos' purported control over them." *Id.*

6. "Whether the Bankruptcy Court erred by failing to afford the Third Party Tenants due process and an adversary proceeding prior to ordering turnover over their objection, as required by applicable law." *Id.*

7. "Whether the Bankruptcy Court erred by entering turnover without the unlawful detainer courts, having entered a judgment and obtaining a writ of execution." *Id.*

8. "Whether the Bankruptcy Court erred by not deferring to the unlawful detainer courts on issue of tenancy based on principles of comity and specialization of the tribunal." *Id.*

9. "Whether the Bankruptcy Court erred in issuing turnover even though the applicant failed to provide tenants' notice procedures under the CCP and Santa Monica Ordinance objected to." *Id.*

---

[7] The Bankruptcy Court adopted its January 4, 2017 tentative ruling granting the Trustee's Turnover Motion as its January 12, 2017 Order.

[8] Although Appellants list thirteen issues that are subject to their Appeal, Issues Nos. 2-12 are simply sub-issues of Issue No. 1, whether the Bankruptcy Court erred in its decision. Therefore, the Court need not address individually each of these sub-issues, which merely describe each argument presented by Appellants as to why the Bankruptcy Court did err in its decision.

10. "Whether the Bankruptcy Court erred by finding it had jurisdiction over the Third Party tenants." *Id.*

11. "Whether the Bankruptcy Court erred in ordering turnover of a property subject to dispute based on Roussos' appealed issues in the compromise order." *Id.*

12. "Whether the Bankruptcy Court erred in awarding turnover of a property subject to being redeemed which would have mooted issues of possession." *Id.*

13. "Whether the Bankruptcy Court erred in not applying any State Law, Local Law, or municipal law prior to evicting Roussos, and whether Roussos had a tenancy under any of the foregoing laws." *Id.*

### III. Legal Standard

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties. When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions. *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

The bankruptcy court's conclusions of law are reviewed *de novo*. *In re Sunnymead Shopping Center Co.,* 178 B.R. 809, 814 (9th Cir.1995) (*citing In re Pecan Groves of Arizona*, 951 F.2d 242, 244 (9th Cir. 1991)). District courts review the bankruptcy court's findings of fact for clear error. *In re Sunnymead Shopping Center Co.*, 178 B.R. at 814 (*citing In re Siriani*, 967 F.2d 302, 303–04 (9th Cir.1992)); *see also* Fed. R. Bank. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). District courts review a "bankruptcy court's choice of remedies . . . for an abuse of discretion, since it has broad equitable remedial powers." *In re Sunnymead Shopping Center Co.*, 178 B.R. at 814 (*citing In re Goldberg*, 168 B.R. 382, 284 (9th Cir. 1994) (other citations omitted.). The Ninth Circuit has held that, "[u]nder this standard, 'a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Sunnymead Shopping Center Co.*, 178 B.R. at 814 (*quoting In re Goldberg*, 168 B.R. at 384).

### IV. Discussion

#### A. The Bankruptcy Court Had Jurisdiction Over Appellants to Compel Turnover of the Units.

When a bankruptcy case is filed, a bankruptcy estate is automatically created, and the estate includes all of a debtor's legal or equitable interests in property as of the commencement of the case. 11 U.S.C. § 541(a)(1); *Chartschlaa v. Nationwide Mutial Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (holding that property of the estate includes "[e]very conceivable interest of the debtor"). Thus, the Bankruptcy Court's jurisdiction over property of the estate is sweeping, and the San

Vicente Property clearly falls within this extremely broad scope. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate").

One of a bankruptcy trustee's primary responsibilities in a Chapter 7 case is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704(a)(1). "Indeed, underlying all of a chapter 7 trustee's actions, including decisions about sales of property of the estate, is the fiduciary duty to maximize distribution to creditors." *In re Ellis*, 2011 WL 61378 (Bankr. D. Idaho Jan. 7, 2011); *see also Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 375 B.R. 719, 727 (S.D.N.Y. 2007) ("Although a Chapter 7 trustee is a fiduciary obligated to treat all parties fairly, his primary duty is to the estate's unsecured creditors"). In fact, to aid bankruptcy trustees in accomplishing their goal of collecting cash to distribute to creditors, Congress empowered trustees to sell property of the estate outside the ordinary course of business, subject to court approval, and after notice and a hearing, pursuant to 11 U.S.C. § 363(b).

Theodosios's Roussos argument that the Bankruptcy Court improperly waded into a landlord-tenant dispute that is uniquely within the jurisdiction of the state court ignores the broad powers of both the Bankruptcy Court and bankruptcy trustees with respect to property of an estate as well as the limited nature of the relief sought by the Trustee in this case. With respect to property of the estate, 11 U.S.C. § 521(a)(4) provides a debtor, at the outset of a case, must surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to the property of the estate. Moreover, 11 U.S.C. § 542(a), the turnover statute, provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Thus, pursuant to Section 521(a)(4) and 542(a), a debtor must surrender and deliver property of the estate to the trustee upon demand. In this case, legal title of the San Vicente Property revested in the Roussos Brothers' bankruptcy estates by virtue of the Property Judgments, and, for that reason, the Trustee had the legal right to seek surrender and delivery of the Units occupied by Theodosios Roussos and the other Appellants. *In re Trujillo*, 485 B.R. 238 (Bankr. D. Colo. 2012). The Bankruptcy Court properly concluded that the Trustee was acting well within the bounds of his powers under the Bankruptcy Code by bringing the Turnover Motion, and the Court concludes that there is no basis to reverse the Bankruptcy Court's January 12, 2017 Order.

Moreover, the Trustee was not seeking to dispossess lawful residents with valid and enforceable leases through a disguised unlawful detainer action.[9] Instead, the Trustee was simply

---

[9] During the 22 years that S.M.B. was the putative owner of the San Vicente Property under the now voided 1994 sale order, Theodosios Roussos and his family lived in the units rent-free. At

seeking to compel turnover of property belonging to Theodosios Roussos's estate under applicable law. There was no evidence presented demonstrating that Theodosios Roussos or any of the other Appellants had a valid possessory interest in the Units under California law. Accordingly, the Bankruptcy Court had jurisdiction to compel the turnover of the Units from Theodosios Roussos and the other Appellants. *Schachter v. Lefrak*, 223 B.R. 431 (Bankr. S.D.N.Y. 1998) (holding that bankruptcy court possessed jurisdiction to enter turnover order compelling non-debtor wife of debtor to surrender cooperative apartment formerly owned by debtor in the absence of a possessory interest granted by valid agreement or decree).

**B.    The Bankruptcy Court Did Not Err in Finding that Appellants Had No Valid Interest in the Units.**

In Opposing the Turnover Motion, Appellants argued that they had valid written leases for the Units which dated back to January 2, 1995. Appellants attached copies of three leases purportedly signed by S.M.B. and S.M.B. Management, as lessors, and Theodosios Roussos and Paula Roussos, as lessees.[10] However, these leases were never produced during discovery (despite being responsive to the discovery requests) and contradicted sworn testimony Theodosios Roussos provided before and during the bankruptcy case. For example, during his December 13, 2000 judgment debtor examination, Theodosios Roussos testified that he had lived in Unit 4B with four of his children for the past 16 or 17 years. He also testified that he lived in the unit rent-free in exchange for property management services and that there was no written agreement between him and S.M.B. evidencing this arrangement. However, in his November 14, 2005 judgment debtor examination, Theodosios Roussos testified that his family occupied not one, but two units, Units 4B and 3B. At his June 8, 2016 deposition, Theodosios Roussos testified that his family occupied either one or two units in the San Vicente Property, depending on their needs. Appellants only produced the purported written leases for the Units when they were facing removal from and the sale of the San Vicente Property.

In light of these facts, the Bankruptcy Court correctly concluded that Theodosios Roussos was judicially estopped from presenting the leases as evidence that he and the other Appellants had a leasehold interest in the Units. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from playing fast and loose with the courts." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (internal citations omitted). Theodosios Roussos failed to produce the leases in response to the Trustee's discovery requests, even though the leases were responsive to those discovery requests and the Bankruptcy Court had entered an order compelling Theodosios Roussos to respond to the discovery requests. As a result of his failure to timely produce the leases in response to the Trustee's discovery requests, the Bankruptcy Court concluded that

---

his December 13, 2000 judgment debtor examination, Theodosios Roussos testified that he and his family were permitted to live in the units in exchange for property management services rendered by him to S.M.B.

[10] No leases or other documents were presented to demonstrate that any of the Appellants other than Theodosios Roussos had a purported leasehold or other interest in the Units.

Theodosios Roussos could not then rely on those leases to demonstrate a leasehold interest in the Units in opposing the Turnover Motion. In addition, the Bankruptcy Court concluded that Theodosios Roussos's argument that he had a leasehold interest in the Units was directly contradicted by his testimony at the December 2000 judgment debtor examination where he testified that there was no written agreement evidencing the arrangement permitting him to live in the San Vicente Property rent-free in exchange for providing property management services to S.M.B. The Bankruptcy Court did not err in finding that, in light of Theodosios Roussos's prior testimony that there was no written agreement regarding his tenancy and his failure to produce any leases in response to the Trustee's discovery requests even after being compelled to do so by the Bankruptcy Court, Theodosios Roussos was judicially estopped from presenting the leases as evidence in opposition to the Turnover Motion.[11]

Moreover, the Bankruptcy Court correctly held that even if the leases were authentic and Theodosios Roussos had not been estopped from introducing them, Theodosios Roussos would still be required to turnover the Units to the estate. In October 2016, the Bankruptcy Court entered an order providing that the 1994 sale of the San Vicente Property to S.M.B. was void *ab initio*, and that the San Vicente Property became the property of the jointly administered bankruptcy estates of the Roussos Brothers. Therefore, any leasehold interest that may have existed between Theodosios Roussos and S.M.B. merged with his estate's ownership interest in the San Vicente Property, and the purported leasehold interest has ceased to exist.[12] *See, e.g., Kolodge v. Boyd*, 88 Cal. App. 4th 349, 361 (2001) ("Whenever a greater estate and a lesser estate in the same parcel of real property are held by the same person, without an intermediate interest or estate, the lesser estate generally merges into the greater estate and is extinguished"). Because his purported leasehold interest no longer exists, Theodosios Roussos cannot rely upon that interest as a basis to remain in the San Vicente Property.

### C. The Relief Sought by the Trustee Did Not Require an Adversary Proceeding.

Although Federal Rule of Bankruptcy Procedure 7001 establishes the general rule that a party must commence an adversary proceeding when seeking to recover money or property, Rule 7001(1) recognizes an exception for any "proceeding to compel the debtor to deliver property to the trustee." In addition, pursuant to Rule 9014, in a contested matter not otherwise governed by the bankruptcy rules, a party may request relief by motion. Therefore, the Trustee did not violate

---

[11] The Court also shares the Bankruptcy Court's concerns regarding the authenticity of the leases.

[12] Although it is a fundamental principle that "[t]he doctrine of merger is to be applied in a manner calculated to prevent injustice, injury and prejudice to the rights of innocent third persons [such that] it has been held that the doctrine [will] not be applied to extinguish a leasehold estate when the lessee acquire[s] the fee, when the application of the doctrine would [prejudice] the rights of an innocent third party," Theodosios Roussos was not an innocent party entitled to invoked the equitable power of the Bankruptcy Court. *6424 Corporation v. Commercial Exchange Property, Ltd.*, 171 Cal. App. 3d 1221 (1985). Theodosios Roussos conspired with his brother and others to defraud the Bankruptcy Court and creditors in creating sham entities to acquire title to the Properties. For more than two decades, Theodosios Roussos and his family profited from his fraud. Thus, any pleas for equity to the Bankruptcy Court rightfully fell on deaf ears.

any party's due process rights when he sought turnover of the Units by motion as opposed to an adversary proceeding. *See In re Toledano*, 299 B.R. 284, 299 (Bankr. S.D.N.Y. 2003) ("The Debtor's position is incorrect because the exception to Bankruptcy Rule 7001 is clearly not inapposite. In fact, it specifically allows a trustee to compel the debtor to turnover property of the estate by motion rather than by adversary proceeding").

In addition, the fact that Appellants other than the debtor, Theodosios Roussos, occupy the Units does not change this analysis. Even assuming that the leases presented to the Bankruptcy Court were authentic and binding, Theodosios Roussos is the only "lessee" identified in those leases. None of the other Appellants are identified in the leases as lessees.[13] Thus, even if the leases were valid and remained in effect, the Trustee's relief under the turnover provisions of the Bankruptcy Code only extended to Theodosios Roussos, as the sole party in privity with the purported leasors, S.M.B. and S.M.B. Management. Accordingly, the Court declines to reverse the Bankruptcy Court's decision that the Trustee could seek turnover of the Units by motion, rather than through an adversary proceeding because Theodosios Roussos, the debtor, is in control of the Units.

## V. Conclusion

For all the foregoing reasons, the Bankruptcy Court's January 12, 2017 Order is **AFFIRMED**, and this appeal is dismissed with prejudice.

IT IS SO ORDERED.

---

[13] Moreover, none of Theodosios Roussos's children could have been identified in the leases as lessees because they were all under the age of consent at the time the leases were allegedly executed in 1995. In addition, Dr. Singer, Theodosios Roussos's son-in-law, is not identified in the leases.